```
          IN THE UNITED STATES DISTRICT COURT FOR
         THE DISTRICT OF MARYLAND, NORTHERN DIVISION
                                *
FIDELITY BANK, PLC
                                *
     Plaintiff,
                                *
v.
                                *
M/T TABORA, her engines,                CIVIL NO.: 05-CV-0871
tackle, and apparel, in rem,    *
et al.,
                                *
     Defendants.
                                *

*    *    *    *    *    *    *    *    *    *    *    *    *
```

MEMORANDUM OPINION

Fidelity Bank PLC ("Fidelity") sued the M/T TABORA, *in rem*, Northern Fox Shipping N.V., and Eres N.V. Belgium (collectively, the "Defendants") for breach of contract and conversion. Defendants counterclaimed for declaratory judgment that Fidelity's claim is time-barred and damages for wrongful arrest and demurrage charges. Pending are Fidelity's motion to stay and to dismiss its complaint and Defendants' counterclaims. Also pending are Defendants' motions for summary judgment and attorney fees.

For the following reasons, Fidelity's motion to dismiss will be granted; its motion to stay denied as moot. Defendants' motions for summary judgment and attorney's fees will be denied.

I.  Background

In September 2002, Eres, a Belgian corporation, contracted to sell 25,000 tons of bitumen to Chief Pius Akinyelure of Nigeria.  Def. Mot. for Summary Judgment, p. 1.  Fidelity, a Nigerian corporation, financed the purchase.  *Id* at p. 2.  The TABORA, owned and operated by Northern Fox Shipping, a Netherlands Antilles corporation, was chartered to transport the bitumen from Curacao, Netherlands Antilles, to Lagos, Nigeria.  *Id* at Ex. C.

The TABORA arrived off the coast of Nigeria on October 30, 2002 and began off-loading its cargo.  Def. Mot. for Summary Judgment, p. 2.  According to the Defendants, the off-loading was interrupted when the TABORA was attacked by "armed marauders."  *Id.*  As a result, only 3,740 tons of bitumen were delivered.  *Id.*

On December 17, 2002, Fidelity filed a complaint in the Federal High Court of Nigeria seeking to arrest the TABORA for failing to deliver its cargo.  Complaint, ¶ 14-16.  The TABORA sailed from Nigerian waters, however, before the Nigerian court's order of injunction could be served.  *Id.*

On December 23, 2002, Defendants notified Fidelity that it was unsafe for the TABORA to remain near Lagos and requested an alternate port of discharge.  Def. Mot. for Summary Judgment, Ex. F.  Defendants allege that Fidelity declined to nominate an alternate port, and, as a result, the TABORA sat in international

waters for 118 days, accruing heating and demurrage charges at a rate of approximately $32,000 per day.  Def. Mot. for Summary Judgment, p. 2-3.  On February 5, 2003, Defendants sold the remaining bitumen to another customer.  Simpson Affidavit, ¶ 11.

On March 17, 2005, Fidelity had the TABORA arrested in Curacao.  Def. Mot. for Summary Judgment, p. 3.  A Netherlands Antilles court vacated the arrest the next day, however, finding that Fidelity had failed to prove that it had filed a claim for damages within one year of non-delivery of the cargo.  Def. Mot. for Summary Judgment, Ex. M.

On March 22, 2005, Fidelity filed a request in the Federal High Court of Nigeria to amend its December 2002 complaint and to renew the summons.  Mbanefo First Affidavit, ¶ 9.  On April 8, 2005 the High Court granted Fidelity's request.  *Id* at ¶ 10.  Defendants have moved to vacate the High Court's order and a hearing on the Defendants' motion is currently pending.  Mbanefo Third Affidavit, ¶ 4, Mbanefo Affidavit in Support of Plaint.'s Opp. to Def.s' Mot. for Summary Judgment, ¶ 2.

On March 31, 2005, Fidelity filed a complaint in this Court alleging breach of contract and conversion and seeking the arrest and attachment of the TABORA.  The ship was arrested on March 31st but this Court vacated that arrest on April 5, holding that Fidelity had failed to offer sufficient proof that it had a pending claim in another court.

3

On April 8, 2005 Defendants answered Fidelity's complaint and counterclaimed. Defendants seek declaratory judgment that Fidelity's claims are time-barred and damages for wrongful arrest and for unpaid heating and demurrage charges incurred by the TABORA. Fidelity sought to stay this action pending its appeal of the vacatur of the arrest and has now moved to voluntarily dismiss its complaint under Federal Rule of Civil Procedure 41(a)(2) and to dismiss the Defendants' counterclaims for *forum non conveniens*. Defendants have moved for attorney's fees incurred in defending the arrest of the TABORA and for summary judgment of Fidelity's complaint.

II.  Fidelity's Motion to Stay

As the Fourth Circuit has dismissed Fidelity's appeal, its motion to stay will be dismissed as moot.

III.  Fidelity's Motion to Dismiss

A.  Fidelity's Motion to Voluntarily Dismiss its Complaint

Under Federal Rule of Civil Procedure 41(a)(2), a plaintiff must have leave of the Court to voluntarily dismiss his complaint after an answer or a motion for summary judgment has been filed. F.R.C.P. 41(a)(2). If a counterclaim has been pled, the Court may not dismiss the action unless the counterclaim can be independently adjudicated by the Court. *Id.*

A plaintiff's motion to dismiss should be granted unless it will inflict "substantial prejudice" on the defendant.  *Flath v. Bombardier, Inc.,* 217 F.3d 838, slip op. (4th Cir. 2000); *S.A. Andes v. Versant Corp.,* 788 F.2d 1033, 1036 (4th Cir. 1986).  Substantial prejudice may be found where the defendant has already incurred considerable expense in defending the case.  *Andes,* 788 F.2d at 1037.  However, the filing of an answer or a motion for summary judgment, without more, will not justify denying a motion to dismiss.  *Andes,* 788 F.2d at 1037 n. 4 (motion to dismiss denied when defendants had already engaged in extensive and costly discovery); *see also Flath,* 217 F.3d 838 (motion to dismiss granted despite the fact that discovery had already commenced).

Defendants do not claim to have engaged in extensive discovery and this case remains at an early stage.  Other than answering Fidelity's complaint and filing their own motion for summary judgment, Defendants only significant action in this case has been an appearance at the post-arrest hearing (which addressed only the issue of the TABORA's arrest).

Accordingly, Defendants will not be substantially prejudiced by the dismissal of Fidelity's complaint.  As Defendants' counterclaim can remain pending in this Court, Fidelity's motion to voluntarily dismiss its complaint will be granted.

5

B.  Motion to Dismiss Defendants' Counterclaims

A court may dismiss an action under the doctrine of *forum non conveniens* when public and private interests strongly favor trial in an alternative forum.  *Piper Aircraft Co. v. Reyno,* 454 U.S. 235 (1981); *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947); *Brown v. Stallworth,* 235 F.Supp.2d 453 (D.Md. 2002).  Although there is generally a strong presumption in favor of the plaintiffs choice of forum, *Gulf Oil,* 330 U.S at 508, that presumption is weakened when the parties are foreign.  *Piper Aircraft Co.*, 454 U.S. 256.

In determining the litigants private interests, courts must consider, *inter alia,* ease of access to evidence; the ability of the Court to compel the attendance of unwilling witnesses; the cost of witness attendance; and the ability of the Court to enforce its judgment.  *Gulf Oil,* 330 U.S at 508.

In deciding the public's interest, courts must consider the burden on the court, the local interest in having controversies decided at home, and the difficulty faced by courts in applying foreign law.  *Id* at 508-509.

Fidelity's breach of contract claim, involving the same facts, is currently pending in a Nigerian court and Defendants are already represented by local counsel.  Although Defendants have asserted that their witnesses face criminal confinement and prosecution in that forum, they have provided no evidence

supporting this assertion.  Nigeria, therefore, provides an alternate forum for adjudication of Defendants' claims.

As all parties are foreign corporations and because the incident giving rise to the dispute took place in Nigeria, access to evidence in this district is limited and the cost of witness attendance will be high.  Additionally, this Court cannot compel foreign witnesses to attend the proceedings, and the ability of the Court to enforce a judgment is limited.  The private interests of the litigants, therefore, favor dismissal.

As this district has no connection to the parties or the facts of the case, and because the Court will have to interpret and apply foreign law, the public's interest likewise favors dismissal.

Given the advantages of dismissal and as the Nigerian courts offer a alternative forum, Fidelity's motion to dismiss Defendants' counterclaims for *forum non conveniens* will be granted.

IV. Defendants' Motion for Attorneys' Fees

Defendants seek award of attorneys' fees and costs incurred in vacating the arrest and attachment of the TABORA.  Defendants argue that the Court should exercise its inherent power to award fees in order to sanction Fidelity for arresting the TABORA in bad faith.  Alternatively, Defendants argue that they should be

7

awarded costs as a matter of contract because they were the prevailing party under Fidelity's contract claim.

A.  Allegations of Bad Faith

Although a court may exercise its inherent power to assess attorneys' fees, "inherent powers must be exercised with restraint and discretion."  *Chambers v. NASCO,* 501 U.S. 32, 44-46 (1991).  Therefore, courts will assess costs only when a party has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons."  *Chambers,* 501 U.S. 32, 45-46 (1991).

Defendants argue that Fidelity acted in bad faith when it 1) arrested the TABORA after the Curacao arrest was vacated; 2) failed to offer a proposal for alternative security; and 3) failed to advise the Court that Defendants had opposed the Nigerian court's *ex parte* order.

Although a Netherlands Antilles court vacated the arrest of the TABORA in Curacao, there is no evidence that Fidelity acted fraudulently or with the knowledge that its action in this Court was without merit when it sought to arrest the TABORA in Baltimore.

Similarly, that Fidelity rejected Defendants alternative security arrangement is not evidence that Fidelity was acting in bad faith.  That the negotiations ultimately failed is evidence of nothing more than a failure of the parties to agree.

Finally, Fidelity's failure to notify the Court of Defendants' opposition to the Nigerian court's *ex parte* order in its Motion for Reconsideration appears, as Fidelity claims, to be nothing more than an oversight.  Defendants have not alleged that they, or the Court, was prejudiced as a result.

As there is no showing that Fidelity acted in bad faith, Defendants motion for attorneys' fees will be denied.


B.  Contract Claim

Defendants alternatively argue for attorneys' fees as a matter of contract, arguing that the charterparty provides for the award of attorneys' fees because Defendants prevailed on Fidelity's breach of contract claim.

Regardless of the terms of the charterparty and Fidelity's potential liability, as this Court has not adjudicated Fidelity's breach of contract claim, Defendants claim for costs is premature.  Accordingly, Defendants' motion for attorneys' fees as a matter of contract will be denied.


<u>December 9, 2005</u>                         <u>        /s/                </u>
Date                                William D. Quarles, Jr.
                                    United States District Judge