IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

FIDELITY BANK PLC,

    Plaintiff –
    Counter-Defendant,

       v.                 CIVIL NO.: WDQ-05-0871

NORTHERN FOX SHIPPING N.V.,
*et al.*,

    Defendants –
    Counter-Plaintiffs.

MEMORANDUM OPINION

Fidelity Bank PLC ("Fidelity") sued the *M/T Tabora*, *in rem*, and Northern Fox Shipping N.V. ("Northern Fox") and Eres N.V. Belgium ("Eres"), *in personam*, for breach of contract and conversion. Northern Fox and Eres (collectively, the "defendants") counterclaimed for, *inter alia*, wrongful arrest of the *Tabora*.[1] For the following reasons, Fidelity's motion for summary judgment will be granted, and the motions for summary judgment of Eres and Northern Fox will be denied.

---

[1] Only the wrongful arrest counterclaim is at issue.

I.   Background[2]

On September 24, 2002, Eres, a Belgian corporation, contracted to sell 25,000 tons of bitumen to a Chief in Nigeria. Paper No. 107 at 1, 4.  The *Tabora*, owned by Northern Fox, a Netherlands Antilles corporation, was chartered to ship the cargo from Curacao, Netherlands, to Lagos, Nigeria.  Paper No. 107 at 4, Ex. 1 at 3.  Fidelity, a Nigerian corporation, consigned the shipment.  Paper No. 107, Ex. 1 at 2.  The bills of lading incorporated the *Hague-Visby* Rules, Paper No. 107, Ex. 1 at 7, which provide liability for cargo loss or damage only if "suit is brought" within one year of when the goods were or should have been delivered, Convention Respecting Bills of Lading for the Carriage of Goods by Sea, Aug. 25, 1924, 51 Stat.

---

[2] In reviewing cross motions for summary judgment, the Court generally "consider[s] and rule[s] upon each party's motion separately and determine[s] whether summary judgment is appropriate to each." *Monumental Paving & Excavating, Inc. v. Pa. Mfrs.' Ass'n Ins. Co.*, 176 F.3d 794, 797 (4th Cir. 1999).
   Here, however, the parties are disputing the "only remaining claim in this case," which is whether Fidelity wrongfully re-arrested the *Tabora* in Baltimore on March 31, 2005.  Paper No. 107 at 1.  With regard to this charge, the parties focus on the same issues--whether Fidelity re-arrested the *Tabora* in a timely manner and in good faith. *See, e.g.*, Paper No. 106 at 4-8; Paper No. 107 at 27-30, 37-40.  Accordingly, the cross motions will be analyzed in one discussion.

233, *amended by* Hague-Visby Amends., art. III § 6, Feb. 23, 1968.[3]

The bitumen should have been delivered "in late November 2002." Paper No. 106 at 5; *see also id.* at Ex. 4. Although the *Tabora* entered Nigeria, the cargo was stolen during off-loading. Paper No. 48 at 2; Paper No. 107, Ex. 11 at 3. On December 17, 2002, Fidelity filed a Statement of Claim in the Federal High Court of Nigeria (the "Nigerian court") for failure to deliver the cargo. Compl. ¶¶ 14-15.[4] Fidelity sought: (1) a declaration that the defendants must deliver the bitumen only to Fidelity; (2) an order directing the defendants to deliver the cargo to the agreed upon ports; (3) damages for breach of contract and the "unlawful detention or delayed delivery" of the cargo; and (4) an injunction restraining the defendants from delivering the cargo to any entity other than Fidelity and from sailing from Nigeria. Paper No. 106, Ex. 4 at 3.

The court enjoined the *Tabora* from leaving Nigerian waters, but the vessel sailed before the order was served, and Fidelity

---

[3] The provision states: "the carrier and the ship shall . . . be discharged from all liability whatsoever in respect of the goods, unless suit is brought within one year of their delivery or of the date when they should have been delivered." Hague-Visby Amends., art. III § 6.

[4] Fidelity named the *Tabora*, Northern Fox, Eres, the Master of the *Tabora*, Eres Nigeria Limited, and the Nigerian Ports Authority as defendants. Paper No. 106, Ex. 4 at 1.

could not seek its arrest. Compl. ¶ 16; Mbanefo Dep. 41:9–42:2, 17–19, Nov. 12, 2007. The Nigerian action has remained *in personam*. Paper No. 107, Ex. 30 at 2.

On March 17, 2005, Fidelity arrested the *Tabora* in Curacao. Paper No. 107, Ex. 11 at 3.[5] The arrest was vacated the next day because (1) there was no evidence that Fidelity had "commenced proceedings within a year," and (2) it was unclear that "proceedings [were] lawfully instituted before a [Nigerian] court." Paper No. 107, Ex. 4 at 3. On March 22, 2005, Fidelity sought to amend its Statement of Claim in the Nigerian court for financial loss and conversion. Paper No. 107, Ex. 15.[6]

Louis Mbanefo, Fidelity's Nigerian counsel, then advised Fidelity that there was "another opportunity" to arrest the *Tabora* because it "was heading to Baltimore." Mbanefo Dep. 70:11-14, Feb. 9, 2010.

On March 31, 2005, Fidelity filed a complaint in this Court, seeking the arrest, garnishment, and attachment of the *Tabora* for breach of contract and conversion. Compl. 4-5. The complaint did not mention the vacated Curacao arrest and referred to the 2002 Nigeria action as "open although in

---

[5] Fidelity was "proceed[ing] pursuant to [the] opinion" of Louis Mbanefo, its Nigerian counsel, who advised in 2003 to arrest the *Tabora* "wherever it was in the world." Mbanefo Dep. 42:9–22, Feb. 9, 2010.

[6] On April 8, 2005, the court granted the request. Mbanefo Dep. 64:12-16, Feb. 9, 2010; Paper No. 70 at 4.

4

suspense." Compl. ¶ 17. The *Tabora* was re-arrested that day. Paper No. 106 at 1.

On April 1, 2005, this Court held a post-arrest hearing. Paper No. 107 at 11. Mbanefo submitted a March 30, 2005, declaration stating, *inter alia*, (1) the 2002 Nigeria action "remained in suspense"; (2) re-assignment of the case had been requested since the original judge had retired; (3) an amended Statement of Claim had been filed; and (4) leave was being sought to serve the defendants in Curacao. Paper No. 108, Ex. A at 2.

On April 5, 2005, this Court vacated the re-arrest because Mbanefo's declaration was "insufficient proof [of a] pending claim," and Fidelity had "failed to show that it [was] entitled to the arrest and attachment" of the *Tabora*. Paper No. 17 at 4.

On April 8, 2005, the defendants answered Fidelity's complaint and counterclaimed for a declaratory judgment, wrongful arrest, and demurrage. Paper No. 19. On September 23, 2005, Eres and Northern Fox moved for summary judgment. Paper No. 48. On October 12, 2005, Fidelity moved to dismiss (1) its complaint voluntarily, and (2) the defendants' counterclaims based on *forum non conveniens*. Paper No. 57. On December 9, 2005, Fidelity's motion was granted. Paper No. 65. On December 20, 2005, the Nigerian court ruled that there was "still subsisting in [the court] the writ of summons [in the 2002

Nigerian action]," and "[t]he suit is also still subsisting [in the court]." Paper No. 106, Ex. 5 at 17.

On July 13, 2007, the Fourth Circuit affirmed the dismissal of the complaint and counterclaims for a declaratory judgment and demurrage, but vacated and remanded the dismissal of the wrongful arrest counterclaim. *Fidelity Bank PLC v. N. Fox Shipping N.V.*, 242 F. App'x 84, 94 (2007).

On February 28, 2008, this Court again dismissed the wrongful arrest counterclaim based on *forum non conveniens*. Paper No. 83. Dismissal was conditioned on the Nigerian court accepting jurisdiction over the defendants and their counterclaim. *Id.* at 16. On June 16, 2009, the Fourth Circuit vacated and remanded the dismissal of the wrongful arrest counterclaim because jurisdiction had not been accepted in Nigeria. *Fidelity Bank PLC v. M/T Tabora*, 333 F. App'x 735, 738 (4th Cir. 2009).

On April 16, 2010, Fidelity moved for summary judgment on the wrongful arrest counterclaim. Paper No. 105. On May 3, 2010, the defendants opposed that motion and moved for summary judgment. Paper No. 107. On May 17, 2010, Fidelity opposed the defendants' motion and responded. Paper No. 108. On June 1, 2010, the defendants filed their reply. Paper No. 109.

II.  Analysis

   A.  Standard of Review

Under Rule 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  In considering the motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

B. Wrongful Arrest Counterclaim

The parties' cross motions for summary judgment focus on "[t]he only remaining claim in this case, [which is] the wrongful arrest of the [*Tabora*] in Baltimore on March 31, 2005." Paper No. 107 at 1. Accordingly, their motions will be analyzed in one discussion. Fidelity argues that it re-arrested the *Tabora* in a timely manner and in good faith. *See, e.g.*, Paper No. 106 at 4-8. The defendants assert that Fidelity's re-arrest was untimely and motivated by "malice, bad faith, and reckless disregard." *See, e.g.*, Paper No. 107 at 27-30, 37-40.

A vessel is wrongfully arrested if the claimant acted in bad faith, malice, or gross negligence. *Frontera Fruit Co. v. Dowling*, 91 F.2d 293, 297 (5th Cir. 1937); *Ocean Ship Supply, Ltd. v. M/V Leah*, 729 F.2d 971, 974 (4th Cir. 1984).[7]

1. The Re-Arrest Was Timely

The defendants argue that because the *Tabora* was never served with process, the 2002 Nigerian action was time-barred under the *Hague-Visby* Rules. Paper No. 109 at 2; *see also*

---

[7] There is a wrongful arrest when the arresting party knew or was charged with knowing that it had no authority to seek an arrest. *See, e.g.*, *Sea Star Line Caribbean, LLC v. M/V Sunshine Spirit*, No. 09-1152 (JAF), 2009 WL 3878246, at *6 (D.P.R. 2009) (charterer acted with malice or gross negligence when arresting vessel because it had implied actual knowledge of a no-liens clause); *Coastal Barge Corp. v. M/V Maritime Prosperity*, 901 F. Supp. 325, 329 (M.D. Fla. 1994) (ship owner wrongfully arrested vessel because it "knew full well of the ship's [contractual] right not to be rearrested").

8

*United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 616 n.2 (1st Cir. 2001) (party not served was not party to the litigation). Accordingly, the defendants argue that Fidelity never had a valid maritime lien and re-arresting the *Tabora* was "improper *per se*." Paper No. 107 at 38, Ex. 30 at 2.

Fidelity argues that it properly filed a Statement of Claim on December 17, 2002, in the Nigerian court because the *Hague-Visby* Rules require only that "suit is brought within one year" of when the goods were or should have been delivered. Paper No. 106 at 4-5; Hague-Visby Amends., art. III § 6. Although both March 2005 arrests were vacated because it was unclear whether a claim was pending, neither court found the action time-barred. Paper No. 108 at 3-4. In December 2005, the Nigerian court confirmed that a "suit" was "still subsisting." Paper No. 106, Ex. 5 at 17.

The defendants have not shown that Fidelity's claim was time-barred. Fidelity filed a Statement of Claim in the Nigerian court about one month after the bitumen should have been delivered. Paper No. 106 at 5. The question is whether an action was brought; the vessel need not have been served.[8]

---

[8] *See, e.g.*, *Petroleos Mexicanos Refinacion v. M/T King A*, 554 F.3d 99, 110 (3d Cir. 2009) (arrest was vacated because charterer "file[d] its complaint" after the statute of limitations expired under the United States's version of the *Hague-Visby* Rules); *A.S.T., U.S.A., Inc. v. M/V Franka*, 981 F. Supp. 937, 938, 941 (D. Md. 1997) (cargo damage claim was time-

9

The defendants have not shown that Fidelity's re-arrest of the *Tabora* was untimely.

2. Bad Faith

The defendants assert that Fidelity acted in "malice, bad faith, and reckless disregard" by failing to prove a pending action in Nigeria and re-arresting the *Tabora* without informing this Court about the Curacao arrest. Paper No. 107 at 30.[9] They assert that "it is likely that this Court would have denied Fidelity's request" to re-arrest the *Tabora* had Fidelity explained that the Curacao arrest had been vacated because it was unclear whether the Nigeria action was pending. Paper No. 107 at 24.

Fidelity asserts that it acted on its good faith determination that (1) "the action was still pending in Nigeria, which tolled the one-year suit requirements under the *Hague-*

---

barred under the United States's version of the *Hague-Visby* Rules because "plaintiff filed suit" more than one year after the goods were delivered); *Gulf P.R. Lines v. Maicera Criolla, Inc.*, 309 F. Supp. 539, 540-41 (D.P.R. 1969) (cargo damage counterclaim was time-barred under the *Hague-Visby* Rules because it was "filed" three years after the delivery date).

[9] The defendants also contend that Fidelity rejected their post-arrest substitute security arrangement in a "bad faith" effort to "use leverage of the arrest . . . to improperly 'shake [them] down'" for money. Paper No. 107 at 34. Negotiating for security after the arrest is irrelevant to whether Fidelity arrested the vessel in bad faith.

*Visby* Rules"; and (2) it could arrest the *Tabora* to "obtain security for the Nigerian action." Paper No. 106 at 7.[10]

There is no evidence that Fidelity re-arrested the *Tabora* in bad faith, malice, or gross negligence, *Frontera Fruit Co.*, 91 F.2d at 297, or that it "reckless[ly] disregarded" the defendants' rights, Paper No. 107 at 31. In vacating the first arrest, the Curacao court did not rule that the Nigerian action was time-barred. *See* Paper No. 107, Ex. 4 at 3. Fidelity did not "kn[o]w full well" that the Nigerian action was dead. *See Coastal Barge*, 901 F. Supp. at 329.[11] It believed that the

---

[10] Fidelity proffers "the law of the case" doctrine: "[O]nce the decision of an appellate court establishes the law of the case, it must be followed in all subsequent proceedings in the same case in the trial court" unless certain exceptions apply. *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009) (citation and internal quotation marks omitted). On December 9, 2005, this Court denied awarding attorneys' fees to the defendants because there was "no evidence that Fidelity acted fraudulently or with the knowledge that its action in this Court was without merit when it sought to arrest the [*Tabora*] in Baltimore." Paper No. 106, Ex. 2 at 8. On appeal, the Fourth Circuit did not address this finding.

The "law of the case" does not apply because this Court ruled on bad faith regarding attorneys' fees only, and the defendants did not appeal this issue. Paper No. 107, Ex. 26 at 9 n.6; *cf. JH ex rel. JD v. Henrico Cnty Sch. Bd.*, 395 F.3d 185, 197 n.9 (4th Cir. 2005) ("law of the case" was inapplicable because even though the appellate court did not *reverse* a finding about an applicable standard, it never *decided* that issue).

[11] The defendants rely upon *Coastal Barge*. Coastal Barge agreed not to re-arrest a ship in exchange for the transfer of liability. *Coastal Barge*, 901 F. Supp. at 326. But Coastal Barge re-arrested the ship and did not inform the court of the contract. *Id.* Coastal Barge later explained that it had

11

action was still pending, as evidenced by Mbanefo's declaration--dated one day before the re-arrest--that Fidelity sought to amend its claim and re-assign the case. Paper No. 108, Ex. A at 2. The defendants concede that "Fidelity may have had a good faith basis for believing that the Nigerian action was still pending on March 31, 2005." Paper No. 107 at 31.

Also, the defendants' surmise that this Court would have denied Fidelity's re-arrest request had it been informed about the vacated Curacao arrest is unfounded. In seeking re-arrest, Fidelity properly filed a "verified" complaint stating with "particularity the property that [wa]s the subject of the action" and that the *Tabora* was "within the district" or would be while the action was pending. *See* Fed. R. Civ. P. Supp. C(2)(a)-(b); Compl. ¶¶ 4-5. "If the conditions for an *in rem* action *appear* to exist, the court *must* issue . . . a warrant for the arrest." Fed. R. Civ. P. Supp. C(3)(a)(i) (emphasis added). These conditions "appear[ed]" to exist because Fidelity stated with "particularity" its dispute with the defendants giving rise

---

violated the contract because it could not transfer liability because its claim was time-barred. *Id.* at 327. Coastal Barge's arrest was wrongful because it had "consciously withheld information [about the contractual duty not to re-arrest]." *Id.*, *id.* at 329.
  Coastal Barge was held to "the risk of its own error" since it was solely mistaken about the "timeliness" of its claim. *Id.* at 328-29. Here, there is no evidence that Fidelity was mistaken about the timeliness of the Nigerian action; in fact, the Nigeria court confirmed in December 2005 that the action was "still subsisting." Paper No. 106, Ex. 5 at 17.

to its claim. *See* Fed. R. Civ. P. Supp. E(2)(a); Compl. ¶¶ 7–19 (describing the defendants' failure to deliver the bitumen). Thus, with knowledge of the Curacao proceeding, the Court would have required the arrest of the *Tabora*.

Accordingly, Fidelity's motion for summary judgment must be granted, and the motions for summary judgment of Eres and Northern Fox must be denied.[12]

III. Conclusion

For the reasons stated above, Fidelity's motion for summary judgment will be granted, and the motions for summary judgment of Eres and Northern Fox will be denied.

<u>October 18, 2010</u>             _____/s/_____
Date                                      William D. Quarles, Jr.
                                               United States District Judge

---

[12] Fidelity's advice-of-counsel defense is moot.